UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TONI M. LEE,

                       Plaintiff

                                                DECISION AND ORDER

-vs-

                                                10-CV-6036 CJS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.
_____

APPEARANCES

For the Plaintiff:              Mark M. McDonald, Esq.
                                    Bond and McDonald
                                    91 Genesee Street
                                    Geneva, New York 14456

For the Defendant:          Kathryn L. Smith, A.U.S.A.
                                    United States Attorney's Office
                                    100 State Street
                                    Rochester, New York 14614

INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Toni Lee ("Plaintiff") for supplemental security income ("SSI") disability benefits. Now before the Court is Defendant's motion [#4] for judgment on the pleadings and Plaintiff's cross-motion [#6] for judgment on the pleadings. For the reasons that follow, Defendant's application is denied, Plaintiff's application is granted, and this matter is remanded for the calculation of benefits.

PROCEDURAL HISTORY

This case has a long and unusual procedural history. Very briefly, Plaintiff first applied for SSI benefits on April 30, 2002, and the instant motions represent the third time that this Court has been required to review Defendant's denial of benefits to Plaintiff. The first time, the Court reversed the Commissioner's decision and remanded for a new hearing. *See, Lee v. Barnhart*, 6:05-CV-06733-CJS, Docket No. [#8]. In that case, during oral argument of the parties' motions for judgment on the pleadings, counsel for the Commissioner admitted that a remand was appropriate. *Id*. at p. 24. The second time, the parties stipulated to a remand for further administrative proceedings, pursuant to 42 U.S.C. § 405(g), sentence four, because the ALJ had not complied with this Court's Decision and Order following the previous remand. *See, Lee v. Astrue*, 6:08-CV-06068-CJS, Docket No. [#7] ("The parties further stipulate and agree that on remand, the Administrative Law Judge will be directed to obtain evidence from a medical expert,[1] as set forth in District Court Judge Siragusa's November 16, 2006 Decision and to fully comply with Judge Siragusa's decision in all respects."). On remand, the ALJ again found that Plaintiff was not disabled, and Plaintiff subsequently commenced the instant action. Plaintiff's application for benefits has now been pending almost ten years.

VOCATIONAL HISTORY

Plaintiff was forty-two years old at the time of the most-recent hearing. Plaintiff completed high school and earned a certificate as a nursing aide. Plaintiff has a limited work history, consisting of a few years as a home health aide, and a year or two as a

---

[1] As discussed further below, the ALJ did not comply with this requirement even after the second remand.

nursing aide. Plaintiff has not worked as a nursing aide since 2001. Subsequently, Plaintiff worked as a daycare provider in her home for a short time, but decided that she could not physically perform the job.

## ACTIVITIES OF DAILY LIVING

At the hearing, Plaintiff testified that she sleeps approximately twelve hours per day, as follows: six hours at night, and two three-hour naps during the day. (660-661). Plaintiff indicated that her medications make her drowsy. (661). Plaintiff stated that she suffers from urinary stress incontinence, which can make her lose bladder control "at any given time." (661). Plaintiff takes medication for this condition, and wears incontinence pads. (662) Plaintiff stated that she needs to use the bathroom every hour. (665) Plaintiff indicated that she needs assistance from her children to perform shopping and household chores.

## MEDICAL EVIDENCE

Plaintiff's medical history was summarized in the parties' submissions and need not be repeated here in its entirety. It is sufficient for purposes of this Decision and Order to note the following facts. Plaintiff's primary medical problems are lower-back pain and obesity. Plaintiff also has received medication for depression and urinary stress incontinence. As for her depression, Plaintiff has never been examined or treated by a psychiatrist, and has received only periodic counseling from a therapist recommended by her family doctor. (424, 550, 619). However, Plaintiff has taken a variety of prescribed anti-depressant medications for several years. (403, 532, 550, 601).

Plaintiff's treating physician and chiropractor both indicate that she is unable to work due to her back pain, and there is medical evidence of a condition that would cause

such pain, contrary to the ALJ's suggestion. *See, e.g.*, Transcript at 202-204 (electrodiagnostic testing indicating irritation of the S1 nerve root); 259, 385 (physical exam reveals decreased range of motion and Laseque's, Braggard's, Fajerstajn, Gothdthwait's, Ely's, Nachlas, Yeoman's, and Kemp's tests were positive); 296, 299 (plaintiff unable to walk heel-to-toe without assistance, positive tenderness and muscle spasm, positive straight-leg testing). However, MRI tests have been negative. David Hannan, M.D. ("Hannan"), Plaintiff's primary care physician, indicates that Plaintiff has the following limitations: lift and carry less than ten pounds; stand and/walk less than two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; limited ability to push and/or pull; never able to climb, balance, kneel, crouch, crawl, or stoop; and limited ability to reach, handle, and finger. (241-243). Hannan also indicates that Plaintiff needs to lie down and/or rest, for three hours at a time, at least twice during an eight-hour workday. (391-393). Hannan further reports that Plaintiff suffers from urinary stress incontinence, which is controlled with medication. (406, 418, 425)

Marianne Santell, D.C. ("Santell"), Plaintiff's chiropractor, indicates that Plaintiff is unable to work due to "lumbalgia, facet syndrome, myofachiitis, and right-sided sciatica." (385-386). Santell states that Plaintiff has the following limitations: rarely lift less than ten pounds; stand and walk occasionally (up to 33%of workday); sit rarely (up to 5% of workday); and never stoop, crouch, or climb ladders. (387).

On April 18, 2005, Dr. James Naughten, D.O. ("Naughten"), a family practitioner, conducted a neurological consultative examination of Plaintiff at Defendant's request. Naughten indicates that Plaintiff has mild restrictions on bending, lifting, and carrying, and can lift and carry ten pounds, stand or walk for at least two hours in an eight-hour

workday, and sit for six hours in an eight-hour workday. (298- 299). Naughten also indicates that Plaintiff has some postural limitations, as well as limitations on her ability to push and/or pull, because of back pain. (299).

On July 29, 2009, at the hearing held before the ALJ, psychologist Ralph Sibley, Ph.D. ("Sibley") testified as an expert witness concerning Plaintiff's mental condition. In that regard, Sibley expressly stated that he was testifying concerning Plaintiff's "mental condition" (651), and that he was "not a medical doctor." (654).[2] Sibley testified that Plaintiff suffers from depression, but not to the extent that would qualify as a listed impairment. Sibley further indicates that Plaintiff would likely benefit from regular counseling. (654). As for Plaintiff's mental residual functional capacity, Sibley indicates that Plaintiff has moderate limitations in the following areas: 1) the ability to understand and remember detailed instructions; 2) the ability to carry out detailed instructions; 3) the ability to maintain attention and concentration for extended periods; 4) the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms; 5) the ability to interact appropriately with the general public; and 6) the ability to respond appropriately to changes in the work setting. (655). Sibley states that such limitations would result periods of unsatisfactory job performance at unpredictable times. (655-656).

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be

---

[2] As mentioned above, the ALJ was ordered to obtain evidence from a "medical expert," which Sibley is not.

conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (Citations omitted). At step five of the five-step analysis above, the Commissioner may carry his burden by resorting to the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also*, SSR 83-10 (Stating that in the grids, "the only impairment-caused limitations considered in each rule are exertional limitations.") However, if a claimant has nonexertional impairments which "significantly

limit the range of work permitted by his exertional limitations," then the Commissioner cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert ["(VE)"](or other similar evidence) that jobs exist in the economy which claimant can obtain or perform."[3] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[4]

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).  However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling.   And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)).  Nevertheless,

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of

---

[3] "Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 416.969a(a). "Non-exertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969a(c).

[4] 20 C.F.R. § 416.969(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

> a treating physician must consider various 'factors' to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id*. The regulations also specify that the Commissioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.' *Id*.; *accord* 20 C.F.R. § 416.927(d)(2); *see also Schaal*, 134 F.3d at 503-504 (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Administrative Law Judges are required to evaluate a claimant's credibility concerning pain according to the factors set forth in 20 C.F.R. § 404.1529, which states in relevant part:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528 (b) and (c). By other evidence, we mean the kinds of evidence described in §§ 404.1512(b) (2) through (6) and 404.1513(b) (1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.
> ***
> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then

> determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a).  The regulation further states, in relevant part:

> Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).

## THE ALJ'S DECISION

On October 28, 2009, the ALJ issued the decision that is the subject of this action. (463-473).  At the first step of the five-step sequential analysis described above, the ALJ found that Plaintiff had not engaged in substantial gainful employment since April 30, 2002, the filing date. (466)  At the second step of the analysis, the ALJ found that Plaintiff had the following severe impairments: "low back pain as a result of an injury that occurred in 1993, obesity, hyperlipidemia and depression." (*Id*.)  At step three of the five-step analysis, the ALJ found that Plaintiff did not have a listed impairment. (21).  In concluding that Plaintiff's depression did not meet the requirements for a listed "affective

disorder," the ALJ noted that such impairment caused Plaintiff to have mild restrictions as to daily living, moderate difficulties in social functioning, and moderate difficulties as to concentration, persistence, or pace. (467). Specifically as to concentration, persistence or pace, the ALJ observed that, according to Sibley, Plaintiff "would have difficulty with understanding and remembering detailed instructions, carrying out detailed or complex instructions, and [maintaining] attention and concentration for extended periods of time." (*Id.*) At step four of the five-step analysis, the ALJ found that Plaintiff could not perform her past relevant work, but that she had the residual functional capacity "to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a)." (468). This regulation states:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a) (West 2011). In reaching this conclusion, the ALJ essentially disregarded the opinions of Plaintiff's treating doctors insofar as they were based on Plaintiff's subjective complaints of pain. (468-471) In this regard, the ALJ indicated that there was really no objective evidence to support Plaintiff's subjective complaints. (*Id.*) (Noting normal MRI test results, x-rays, and straight-leg raise tests). According to the ALJ, Plaintiff's condition consists of "periodic exacerbations of musculoskeletal pain, but generally improved or improving." (470)

At the fifth and last step of the analysis, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including

"general assembler," "addresser," and "order clerk." (472).  On this point, the ALJ stated, contrary to his earlier finding that Plaintiff could perform "the full range of sedentary work," that Plaintiff's "ability to perform all or substantially all of the requirements of this level [sedentary] of work has been impeded by additional limitations." (472).[5]  The ALJ stated that because of Plaintiff's claimed non-exertional limitations, he had obtained the testimony of a vocational expert ("VE").[6]  The VE testified that a person with Plaintiff's *claimed* physical limitations would not be able to work in any job. (663).  The ALJ then asked the VE to consider a hypothetical claimant with the following limitations:

> [I]ntermittent back pain, in other words, sometimes its controlled, sometimes it's not.  It varies from month to month.  No limitation with respect to the hip or knee problem.  Can sit two hours at a time, stand two hours at a time, walk two hours at a time, take normal breaks during the day, and has mild back pain and mild depression . . . [and is able to lift] 10 to 20 pounds.

(663).  The VE responded, *inter alia*, that such a person could perform the following three sedentary jobs: "general assembler"; "addresser"; and "order clerk/food and beverage industry." (664-665).  When the ALJ asked whether someone with urinary incontinence could still perform those jobs, the VE responded that a urinary incontinence problem such as Plaintiff's would rule out a person's ability to perform the assembler job. (666).  The VE further stated that such a person might also be unable to perform the other jobs

---

[5] In his Memorandum of Law [#4-2] in support of his motion for judgment on the pleadings, Defendant states, in a bold, underlined heading, that **"The ALJ Properly Determined that Plaintiff Could Perform the Full Range of Sedentary Work**." *Id*. at 17.  Meanwhile, in a footnote on the same page, Defendant admits that the ALJ erred in this regard, but argues that such error was harmless. *Id*., n. 7.

[6] The ALJ wrote that he consulted the VE "[t]o determine the extent to which these limitations erode the unskilled **light** occupational base." (472) (emphasis added).  However, this appears to be a typo, since the ALJ purportedly was concerned with the sedentary occupational base.

that he listed, depending upon how long it took the person to change clothes and clean themselves up after each episode of incontinence. (666-670).[7] Moreover, the VE stated that a claimant having the limitations described by the ALJ in his hypothetical above, who also had the moderate mental impairments described by Sibley, would be "off task" for up to one-third of the time, and would be unable to perform any job. (673).

However, despite such testimony by the VE, the ALJ summarized the VE's testimony in his decision as follows:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.08. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light [sic] occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that *given all of these factors* the individual would be able to perform the requirements of representative occupations such as: General assembler . . . Addresser . . . [and[ Order clerk.

(472).  As already noted, though, the VE indicated that a person with Plaintiff's moderate mental impairments and incontinence problem would not be able to perform such jobs. Nevertheless, the ALJ found that Plaintiff could perform such jobs, and that she was therefore not disabled.

## ANALYSIS

The ALJ's decision is internally inconsistent.  On one hand, the ALJ finds that Plaintiff has the ability to perform the "full range" of sedentary work (468), while on the

---

[7] The VE testified that such a person might be able to perform the job of "collator operator," which was classified as light work, which is above the RFC determined by the ALJ. (664, 670)

other hand he admits that Plaintiff has "additional limitations" which "impede" her ability to perform such a full range of work. (472)  Although the ALJ does not identify the "additional limitations" to which he is referring, it seems clear from the record that he is referring to Plaintiff's mental impairments, which he apparently views as resulting from "mild depression." (663).  Moreover, when he evaluates the severity of Plaintiff's mental impairments, the ALJ credits Sibley's testimony, and finds that Plaintiff has "moderate" difficulties with regard to understanding, remembering, and carrying-out detailed instructions, maintaining attention and concentration, interacting with the public, and responding to changes at work.  The ALJ does not give any indication that he disbelieves Sibley's opinion.[8]  However, when considering Plaintiff's residual functional capacity, the ALJ seems to give little if any weight to such mental impairments, since he finds that they do not cause "marked" limitations in Plaintiff's abilities. (469, 471).[9]  Such fact is puzzling, since the VE testified that even the moderate mental limitations described by Sibley would, in conjunction with the physical limitations proposed by the ALJ, prevent the Plaintiff from performing *any job*. (671-673).  To the extent that Defendant may now be arguing, contrary to Sibley's testimony, that Plaintiff does not actually have such moderate mental impairments, such position is inconsistent with the ALJ's findings at

---

[8]Moreover, in his Memorandum of Law in support of his motion for judgment on the pleadings, the Commissioner indicates that Sibley's testimony was substantial evidence upon which the ALJ properly relied. *Id*. [#4-2] at 20-21.

[9]On this point, the ALJ may have felt that he was not required to weigh Sibley's testimony when evaluating Plaintiff's RFC.  In that regard, the ALJ indicated that his findings as to the severity of Plaintiff's mental impairments at step three of the sequential analysis were not an RFC finding. (467-468) (*citing, inter alia*, SSR 96-8p).  However, when making his RFC assesment, the ALJ again discussed Sibley's testimony, and there is no indication that he rejected Sibley's opinion concerning the moderate nature of Plaintiff's mental impairments. (469).  Instead, the ALJ observed only that Sibley "concluded that the claimant's depression did not cause any *marked* limitations." *Id*. (emphasis added).

step three of the sequential analysis.

Additionally, with regard to Plaintiff's non-exertional mental impairments, Defendant appears to argue that such impairments would not prevent Plaintiff from working because they were "moderate," as opposed to "marked." *See, e.g.*, Def. Memo of Law [#4-2] at 20 ("[T]he ME testified that plaintiff had no areas of *marked* limitation that would rule out work.") (emphasis added).  However, the Court disagrees, since, as already discussed, the VE specifically indicated that even if such impairments were present to a *moderate* degree, they would, in conjunction with the physical limitations proposed by the ALJ, prevent Plaintiff from working. (671-673).[10]  Accordingly, the fact that such limitations were less than "marked" seems irrelevant for purposes of determining her RFC.

Nor does the ALJ expressly discredit or reject Plaintiff's testimony regarding her urinary incontinence.  Instead, he comments only that, according to her medical records, "she need[s] to use the bathroom every one and a half to two hours during the day, but only every five hours at night." (471).  Such point is significant since, as already discussed, the VE testified that such condition could also significantly erode Plaintiff's ability to do sedentary work.

Consequently, even assuming *arguendo* that the ALJ correctly described Plaintiff's general physical exertional abilities in his hypothetical questioning of the VE at page 663

---

[10]As the ALJ stated in the section of his decision describing the applicable legal standards, "In making this [RFC] finding, the Administrative Law Judge must consider *all* of the claimant's impairments, including impairments that are not severe." (465) (emphasis added, citations omitted).  Also in his decision, the ALJ found that Plaintiff's depression was "severe," and he acknowledged that, "The regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis." (466).

of the record (which would require the Court to accept the ALJ's finding that Plaintiff's complaints of pain were exaggerated), the VE's additional testimony, concerning Plaintiff's mental impairments and incontinence, indicates that Plaintiff would not be able to perform the sedentary jobs identified above.  Although the ALJ contends that Plaintiff is able to perform certain jobs, such conclusion is not supported by the record, particularly in light of the testimony by the VE and Sibley.   Accordingly, the Court finds that Defendant failed to carry his burden at step five of the sequential analysis.

The Court now must decide whether to remand the action for further administrative proceedings, or whether to remand it solely for the calculation of benefits. On this point, the Court is mindful that Plaintiff's administrative case has been pending since April 2002, a period of more than nine years, although, it is clear that "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005) (citation omitted) (Holding that delay alone was insufficient basis to remand for calculation of benefits, where claimant had not carried her burden at step four of the sequential analysis).  However, such remand may be appropriate where the claimant is unable to perform her past relevant work, and the Commissioner has failed to carry his burden at step five of the sequential analysis by introducing expert vocational evidence of jobs that the claimant can perform.  *Id*. at 103-104 ("[O]n the present record, the ordering of a benefits calculation was hardly out of the question. After all, Butts has proven his case, and the Commissioner has run out of time to meet her step five burden. Moreover, it was well within the power of the Commissioner to fashion procedures that would have ensured that she sought to carry her fifth-stage burden on the first occasion that it fell

upon her. . . . [O]ur holding is limited to cases where the claimant is entitled to benefits absent the Commissioner's providing expert vocational testimony about the availability of appropriate jobs."). Here, in addition to the nine years that this case has been pending, Plaintiff has carried her burden at steps one-through-four of the sequential analysis, and the Commissioner has failed to carry his burden at step five. Moreover, the case has already been remanded twice for further administrative proceedings to allow the Commissioner to correct errors by the ALJ. *See, Lee v. Barnhart*, 6:05-CV-06733-CJS, Docket No. [#8]; *Lee v. Astrue*, 6:08-CV-06068-CJS, Docket No. [#7]. Notably, in both of those cases, the Commissioner agreed that a remand was appropriate. *Id*.

Considering the entire record, the Court finds that this case should be remanded solely for the calculation of benefits.

## CONCLUSION

Defendant's motion for judgment on the pleadings [#4] is denied, and Plaintiff's cross-motion for the same relief [#6] is granted. The case is remanded solely for the calculation of benefits.

So Ordered.

Dated: Rochester, New York
     May 4, 2011

                      ENTER:

                      /s/ Charles J. Siragusa
                      CHARLES J. SIRAGUSA
                      United States District Judge